IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE          §
COMMISSION,                      §
                                 §
            Plaintiff,           §
v.                               §          3:06-cv-02136-P
                                 §
ABC VIATICALS INC.,              §
C. KEITH LAMONDA,                §
and JESSE W. LAMONDA, JR.,       §
                                 §
            Defendants,          §
and                              §
                                 §
LAMONDA MANAGEMENT FAMILY        §
LIMITED PARTNERSHIP,             §
STRUCTURED LIFE SETTLEMENTS, INC., §
BLUE WATER TRUST,                §
and DESTINY TRUST,               §
                                 §
            Relief Defendants.   §

## ORDER

Now before the Court is Defendant C. Keith LaMonda's ("LaMonda") Objections to the

Findings, Conclusions, and Recommendation of the United States Magistrate Judge filed on

March 11 and 12, 2013. (Docs. 414-16) The underlying motions referred to the United States

Magistrate Judge include: (1) LaMonda's Motion to Compel the Receiver to Comply with the

Court's Ordered Compromise and Settlement Agreement filed on May 2, 2012 (Doc. 344); (2)

LaMonda's Motion to Freeze Receivership Assets and Enjoin Further Receivership Expenditures

Pending Resolution of the Motion to Compel filed on July 31, 2012 (Doc. 356); LaMonda's

Motion for Sanctions Against the Receiver Pursuant to Federal Rule of Civil Procedure 11 filed

on September 11, 2012 (Doc. 366); and LaMonda's Motion to Intervene filed on October 19,

2012 (Doc. 374)  After reviewing all relevant matters on record, including the Findings, Conclusions, and Recommendation of the United States Magistrate Judge and any objections thereto, in accordance with 28 U.S.C. § 636, the Court ACCEPTS IN PART and DENIES IN PART the Findings, Conclusions, and Recommendation.  Nevertheless, for the reasons stated below, the Court DENIES LaMonda's Motion to Compel, Motion to Freeze and Enjoin, Motion for Sanctions, and Motion to Intervene.[1]

## I.       Background

This instant dispute questions the conduct of a receiver.  On November 17, 2006, the Securities and Exchange Commission ("SEC") sued Defendants for various securities violations and sought the appointment of a receiver to manage any fraudulently procured assets.  (*See* Doc. 1, pp. 20-21)  On that same day, Michael Quilling ("Quilling") was appointed as the receiver. (*See* Doc. 8)  The receivership order authorized Quilling to seize assets and records held by ABC-Viaticals, Inc. ("ABC"), required ABC to deliver the assets and records to Quilling, allowed Quilling to hire employees to assist in collecting and preserving these assets, and provided Quilling with both judicial and non-judicial vehicles to collect sums of money as well as recover and protect receivership assets.  (Doc. 14, pp. 2-4, 6-7)  At the time this lawsuit was filed, LaMonda was under federal indictment in Florida.  (Doc. 1, p. 4)  He is presently serving a five-year prison sentence in North Carolina.  (Doc, 347, p. 2; Doc. 408, pp. 1-2; Doc. 410, p. 8)

On July 12, 2007, the parties filed an agreed motion to approve a compromise and settlement agreement.  (Docs. 71, 71-2)  The document set out the numerous voluntarily agreed upon rights and obligations.  In particular:

---

[1] On March 25, 2013, LaMonda filed a Motion to Remand to the United States Magistrate Judge for Further Development of the Record Through Discovery and Other Proceedings.  (Doc. 417)  After reviewing the record and LaMonda's instant objections, the Court denies this Motion as without merit.

1.     **Real Property in Kissimmee, Florida**. The house at 1300 Grandview Boulevard in Kissimmee, Florida ("Kissimmee House") is deemed to be impressed with an *equitable constructive trust lien in favor of the Receiver in the amount of $1,425,000.00*. The lien shall be deemed to exist as of July 21, 2005. Within ten days of signing this Agreement, the LaMondas shall provide the Receiver with (1) keys, security codes, and any other information needed to access the property and (2) as they are received, copies of all invoices relating to the property, including but not limited to any mortgages, maintenance, insurance, and utilities. So long as the Receiver, in his discretion, deems it proper, he shall pay all expenses relating to the Kissimmee House. *So long as the property is maintained to the Receiver's satisfaction*, Keith LaMonda and Leigh Bradley may reside in or otherwise use the Kissimmee House until Keith LaMonda is incarcerated and/or Leigh Bradley is disposed of her interest and required to vacate by the Government.[2]

. . . .

15.     **Recovery Efforts by the Receiver**. The Receiver believes that there may be *additional assets* he can recover from third parties. To the extent that the LaMondas *assist* the Receiver with respect to the efforts, Berna LaMonda will be *paid 25% of the net recovery* as to each effort in which they assist.

. . . .

17.     **Failure to Perform Shall Be Civil Contempt**. Should the LaMondas or any one of them or the Receiver fail to surrender possession of the assets or perform the obligations stated as required herein, they agree that such act shall constitute civil contempt in violation of the Receivership Order and fully understand and agree that the Receiver shall be free to seek civil contempt sanctions against them.

(Doc. 71-2, pp. 2, 8-9 (emphasis added))  On that same day, the Court approved the settlement

agreement.  (Doc. 73)  The order provided:

All provisions of the Agreement shall be considered to be Orders of the Court. Any failure by one or more of the LaMondas or the Receiver to comply with the obligations stated within the Agreement *shall constitute civil contempt* of this Court to be addressed by further order of the Court after proper motion and chance to be heard.

IT IS FURTHER ORDERED that the Court hereby recognizes and decrees the existence of an *equitable constructive trust lien* in favor of the Receiver against the house located at 1300 Grandview Boulevard in Kissimmee, Florida in the

---

[2] Although the settlement agreement detailed other real properties, LaMonda's objections only focus on this tract.

amount of $1,425,000.00.  Said lien is deemed to have arisen and exist in favor of the Receiver as of July 21, 2005.

(*Id.* at 1-2 (emphasis added))  In a separate order on that same day, the Court entered an agreed interlocutory permanent injunction against LaMonda and others, restraining certain actions that would otherwise constitute securities violations.  (Doc. 72)

Pursuant to the settlement agreement, LaMonda asserts that he assisted with various receivership recoveries.  LaMonda argues that he played a role in securing sums arising from business activities associated with ABC.  (Doc. 410, pp. 6, 9)  In addition, on September 19, 2008, LaMonda sent a letter to Joe Lucent regarding the sale of ABC's portfolio of settlement polices and instructed him to find buyers.  (*Id.* at 10)  LaMonda contends that he assisted Quilling because one of LaMonda's clients ultimately purchased ABC's portfolios.  (*Id.*)

After the settlement agreement, this lawsuit appeared to play itself out.  On August 31, 2009, the SEC filed an unopposed motion to dismiss all monetary claims against LaMonda and others.  (Doc. 235)  On September 3, 2009, the Court issued final judgment against LaMonda and others.  (Doc. 236)  In a related matter, on June 14, 2010, LaMonda sued the SEC and Quilling for breach of the settlement agreement.  (Doc. 1, 3:10-cv-01190-P)  On September 26, 2011, the Court accepted the recommendation to dismiss that lawsuit in favor of the instant case. (Doc. 36, p. 10-11, 3:10-cv-01190-P; Docs. 37, 38, 3:10-cv-01190-P)  On November 28, 2011, the SEC filed an unopposed motion for entry of final judgment for all remaining parties.  (Doc. 327)  The following day, the Court issued final judgment and closed the lawsuit.  (Doc. 329)

After final judgment, LaMonda filed four motions which were referred to United States Magistrate Judge Irma Carrillo Ramirez for findings and recommendations.[3]  First, in a motion

---

[3] These four motions constitute a fraction of LaMonda's filings after the case closed.

totaling over 300 pages, LaMonda moved to compel Quilling to: (1) pay LaMonda's nominee 25% of all recovered funds; (2) provide an accounting; (3) provide details and a status update for LaMonda's collectables; (4) return the Florida real property; (5) pay LaMonda's nominee all unpaid expenses due under section 1 of the settlement agreement; (6) pay LaMonda's nominee damages arising from Quilling's breach of the settlement agreement; and (7) find Quilling responsible for all other losses. (Doc. 344, pp. 15-16)  Second, LaMonda moved pursuant to the All Writs Act, 28 U.S.C. § 1651 *et seq.*, to freeze all receivership assets and enjoin further expenditures pending the resolution of his Motion to Compel because Quilling acted in bad faith while managing the receivership estate and committed perjury during certain court filings. (Doc. 356)  Third, LaMonda moved for sanctions against Quilling pursuant to Federal Rule of Civil Procedure 11 because Quilling made certain objectionable representations. (Doc. 366)  In particular, Quilling allegedly stated that: (1) LaMonda engaged in a Ponzi scheme; (2) LaMonda sought relief "in hopes that the Receiver might pay him to go away;" and (3) LaMonda would "only [be] encourage[d]" by settlement discussions to continue his present course of conduct. (*Id.* at 2-10)  Finally, LaMonda moved to intervene as a necessary party. (Doc. 374, pp. 2-8)

As the filings mounted, on December 6, 2012, the magistrate judge directed the parties to refrain from filing further motions or documents until otherwise ordered. (Doc. 399)  On March 25, 2013, this order was lifted. (Doc. 418)

On February 7, 2013, the magistrate judge set an evidentiary hearing for the aforementioned motions. (Doc. 407)  LaMonda was transported from his federal correctional facility in North Carolina to Texas for the hearing. (Doc. 408)  On February 20, 2013, the magistrate judge conducted a hearing where she heard testimony and accepted evidence.

On February 22, 2013, the magistrate judge issued her findings, conclusions, and recommendation to deny all four motions.  (Doc. 410)  In so doing, the magistrate judge construed LaMonda's Motion to Compel as a motion to show cause why Quilling should not be held in contempt.  (*Id.* at 1, 4-5, 18-19)  The magistrate judge stated:

> Although never specifically recited in his motion, it appears from the relief he expressly seeks that LaMonda is reasserting his allegations in the prior civil action, i.e., that the Receiver breached the Agreement and Order by foreclosing upon the equitable constructive trust lien, failing to pay the expenses of the Property, and failing to pay LaMonda 25% of the net recovery of all assets that the Receiver recovered based on LaMonda's assistance.

(*Id.* at 4-5 (citing the record))  During the hearing itself, LaMonda agreed on the record that his motion was best characterized as one for contempt for violating a prior court order and also affirmatively stated his wishes to forego any claim for payment of expenses associated with the real property in Florida.  (*Id.* at 5)

Proceeding *pro se,* LaMonda now objects to the findings, conclusions, and recommendation.

## II.    Legal Standard

A court reviews *de novo* those portions of a magistrate judge's findings, conclusions, and recommendation to which timely objections are raised.  *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Koetting v. Thompson,* 995 F.2d 37, 40 (5th Cir. 1993).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

### III.   Analysis

LaMonda timely objects to the magistrate judge's findings, conclusions, and recommendation on 22 grounds. [4]  Each is addressed in turn.

### a.  Objection 1

First, LaMonda argues that the magistrate judge incorrectly construed his Motion to Compel as a motion to show cause to which he mistakenly consented to as a *pro se* party.  (Doc. 415, p. 2)  Consequently, this determination elevated LaMonda's burden of proof.  (*Id.* at 3)

A magistrate judge may certify facts that "constitute[] a civil contempt."  28 U.S.C. § 636(e)(6)(B)(iii) ("[T]he magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.").  Although not abundantly clear from the statute or case law, where a magistrate judge certifies facts suggesting that contempt is not warranted, the reviewing district judge need not conduct a subsequent hearing to determine if an act constitutes contempt because the magistrate did not certify facts suggesting as much.  *See* § 636(e)(6)(B) ("The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge."); *see also Bear Stearns Cos. v. Lavalle*, No. 3-00-CV-1900-D, 2002 U.S. Dist. LEXIS 3582, at *3 (N.D. Tex. Mar. 4, 2002) (Sanderson, M.J.) ("The credibility of Defendant's representations will be decided by the District Court at its show cause

---

[4] Two different objections are double counted as "Objection 6."  (*See* Doc. 415, pp. 7-9)  As such, the total number of objections is actually one more than the briefing otherwise reflects through numeric recitation.

hearing. The District Court will also determine whether Defendant's conduct, as it is found by the court, constitutes civil and/or criminal contempt as previously recommended by the magistrate judge.").

Contempt is properly classified as civil in nature if the order: (1) seeks compliance with a former court order; or (2) compensates for losses. *See Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 290-91 (5th Cir. 2002) ("A contempt order is civil in nature if the purpose of the order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions."). As a heightened standard, the movant for a civil contempt must show by clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct; and (3) the opposing party failed to comply with the court order. *See Whitcraft v. Brown*, 570 F.3d 268, 271-72 (5th Cir. 2009) ("[A] movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence 1) that a court order was in effect, 2) that the order required certain conduct by the respondent, and 3) that the respondent failed to comply with the court's order." (quoting *Martin v. Trinity Indus., Inc.*, 959 F.2d 45, 47 (5th Cir. 1992))). In contrast, a motion to compel is generally procedural means to assist with discovery. *See* Fed. R. Civ. P. 37.

Upon *de novo* review, LaMonda's Motion to Compel is properly construed as a motion for contempt because the requests and remedial relief sought properly fit the rubric of contempt and not compulsory discovery measures. In LaMonda's Motion, he seeks to coerce affirmative actions and receive compensation for legal rights that arise from prior court orders. Accordingly, LaMonda's requests fit nicely within the confines of civil contempt. These requests cannot be pursued under a motion to compel because they do not relate to or involve discovery. Here, LaMonda desires a variety of corrective measures stemming from actions by Quilling that

allegedly violate the settlement agreement and prior court orders. To give these requests the

movant's intended effect, the Motion to Compel is properly treated as a motion for contempt.

Insofar as LaMonda expresses concern that he was forced to confront a heightened evidentiary

burden, the nature of the request and resultant impact on legal relations drives the burden—not

the self-styled title of a motion.[5] Furthermore, had the magistrate judge actually treated this

Motion as worded, LaMonda's request would fail *ab initio* because there is no discovery issue to

compel. Construing these requests as a motion to show cause why Quilling should not be held in

contempt at least gives LaMonda a fighting chance for relief. Finally, LaMonda consented to

this action and cannot retract his acquiescence after failing to receive a favorable result.

### b. Objection 2

Second, LaMonda asserts that the magistrate judge made an inappropriate credibility

determination in favor of Quilling as the receiver. (Doc. 415, p. 3) In essence, the judge

presumed unwarranted credibility and propriety. (*Id.* at 4) If the credibility of a witness is

challenged, *de novo* review of credibility must involve at least a reading of the transcript or

listening to a recording of the testimony. *See Calderon v. Waco Lighthouse for the Blind*, 630

F.2d 352, 356 (5th Cir. 1980) ("A district court cannot make a 'de novo determination' of the

credibility of a witness without at least reading a transcript or listening to a tape recording of the

testimony of the witness."); *United States v. Wallace*, No. 4:00CV221TSL-LRA, 2009 U.S. Dist.

LEXIS 84314, at *6 (S.D. Miss. Sept. 15, 2009); *cf. Pemberton v. Collins*, 991 F.2d 1218, 1225

(5th Cir. 1993) ("The habeas corpus statute obliges federal judges to respect credibility

---

[5] Even reviewed under the preponderance standard, the record fails to demonstrate that Quilling acted in derogation of the settlement agreement or a prior court order. LaMonda seemingly airs a series of grievances, but fails to show what Quilling did to violate the settlement agreement or a prior court order. Under the *de novo* interpretation of the settlement agreement, LaMonda is not entitled to compensation under paragraph 15 and he cannot establish any other wrongdoings attributable to Quilling.

determinations made by the trier of fact."). During the findings, the magistrate judge stated: "The Court also finds the testimony of the Receiver that LaMonda provided no assistance with any recoveries to be more credible than LaMonda's." (Doc. 410, pp. 20-21)

In an abundance of caution, the Court declines to consider or adopt the findings related to Quilling's testimony and still nevertheless finds that the record warrants an order denying contempt. As previously characterized, LaMonda must show by clear and convincing evidence that Quilling violated an existing order. Evidence at bar—sans the factual findings related to Qulling's testimony—does not clearly and convincingly support a finding of contempt for LaMonda's various requests. (*See* Doc. 344, pp. 14-16) Reviewed *de novo*, each underlying motion is tethered to this premise and therefore fails as well.

Taking LaMonda's requests one-by-one under *de novo* review, the record does not support any of his theories for relief. First, LaMonda argues that he is entitled to receive 25% of any recoveries that he assisted with under the settlement agreement. (*Id.* at 15-16) As outlined in paragraph 15: "The Receiver believes that there may be additional assets he can recover from third parties. . . . Berna LaMonda will be paid 25% of the net recovery as to each effort in which they assist." (Doc., 71-2, p. 8) LaMonda argues that he assisted under the settlement agreement by cooperating in the seizure of ABC's assets and records. (Doc. 410, p. 20) Even if ABC could be construed as a third party and notwithstanding the cooperative efforts by LaMonda, he still fails to show how this type of assistance falls under paragraph 15. *See* Subsection d, *infra* 12-13. Far from "additional assets," Quilling was required to seize all of ABC's records and assets from the onset on this lawsuit—months before the settlement agreement was agreed upon or judicially approved. (Doc. 14, pp. 2, 4) Moreover, as a matter of internal consistency, paragraph 10 dispenses with the assets of ABC, rendering them existing—as opposed to additional—assets

under the terms of the settlement agreement.[6]  (Doc. 71-2, p. 7)  LaMonda is unable to negate

this construction.  (Doc. 410, pp. 21-22)  For his second and third requests, LaMonda avers that

he is entitled to an accounting and that Quilling must provide a status update for all of his

collectables.  (Doc. 344, p. 16)  Similar to the first request, he fails to point to an actual violation

under a preexisting order to necessitate such relief.  Further, LaMonda cannot identify a

provision under the settlement agreement that entitles him to these requests.  Fourth, LaMonda

seeks an order returning the real property in Florida.  (*Id.*)  As previously established, the record

is devoid of evidence to dignify satisfying this request.  Fifth, LaMonda moves for unpaid

expenses under paragraph 1 of the settlement agreement.  (*Id.*)  Paragraph 1 allows for expenses

related to the Florida property.  (Doc. 71-2, p. 2)  This request is denied because LaMonda

voluntarily abandoned this position at the hearing.  (Doc. 410, p. 5)  Sixth, LaMonda seeks

recovery for Quilling's breach of the settlement agreement.  This request fails because the record

does not reflect any breach by Quilling.  Finally, LaMonda wishes to hold Quilling responsible

for all other reasonable remedies.  As all of his specific requests for relief prove unavailing, this

nonspecific request is denied as well.

### c.  Objection 3

Third, LaMonda asserts that the magistrate judge's recommendation was premature

because necessary discovery had not yet transpired.  (Doc. 415, p. 4)  In particular, LaMonda

seeks an adequate accounting by Quilling.  (*Id.*)

Reviewing this objection, the findings and recommendation was not premature because

the magistrate judge waded through "almost 300 pages of exhibits" supplied by LaMonda

---

[6] Paragraph 10 states: "All assets of any nature whatsoever belonging to or in which ABC has an interest shall be deemed to be receivership estate assets subject to the Receiver's sole control.  Any limiting language in the Receivership Order shall no longer be applicable."  (Doc. 71-2, p. 7)

himself and made factual certifications based on this information and other items on record that

support a *de novo* finding and legal conclusion that the report was not premature.  (Doc. 410, pp.

5-18)  Moreover, LaMonda fails to demonstrate how any further accounting would have

bolstered his motions.  This type of objection is seemingly never ending and would otherwise

preclude finality.

### d.  Objection 4

Fourth, LaMonda objects to the magistrate judge's methods of contract interpretation

because she supposedly violated the "four corners rule."  (Doc. 415, pp. 4-5)  According to

LaMonda, paragraph 15 is unambiguous and yet the judge still incorporated meaning from the

testimony offered by Quilling.  (*Id.* at 5)

Settlement agreements are contracts that also become court decrees.  *See White Farm*

*Equipment Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. Tex. 1986) ("A settlement agreement is a

contract, but, when incorporated into a judgment, becomes a court decree.").  Contract ambiguity

is a question of law.  *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (citing

*Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983)).  To properly construe a contract, a court

endeavors to discern the intent of the parties by "afford[ing] the words used by the parties their

plain, ordinary, and generally accepted meaning, unless the instrument requires otherwise."

*Chesapeake Operating, Inc. v. Denson*, 201 S.W.3d 369, 371 (Tex. App.—Amarillo 2006, pet.

denied) (citing *Sun Operating P'ship, Ltd. v. Holt,* 984 S.W.2d 277, 285 (Tex. App.—Amarillo

1998, pet. denied); *Phillips Petroleum Co. v. Gillman,* 593 S.W.2d 152, 154 (Tex. Civ. App.—

Amarillo 1980, writ ref'd n.r.e.)); *see also R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596

S.W.2d 517, 518 (Tex. 1980).  Intent requires examination of the entire document "so that the

effect and meaning of one part on any other part may be determined."  *Heritage Res. v.*

*Nationsbank*, 939 S.W.2d 118, 121 (Tex. 1996).  A contract is unambiguous if it can be given

definite or certain legal meaning.  *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*,

940 S.W.2d 587, 589 (Tex. 1996).  When a contract is unambiguous, extrinsic evidence that

creates an ambiguity or varies the meaning of the plain language is not considered.  *See Lewis v.*

*E. Tex. Fin. Co.*, 146 S.W.2d 977, 980 (Tex. 1941).  Conversely, if the contract is subject to two

or more reasonable interpretations, a fact issue on intent remains due to ambiguity.  *See*

*Columbia Gas Transmission Corp.*, 940 S.W.2d at 589.  A contract is not ambiguous simply

because the parties advance different interpretations.  *See Am. Mfrs. Mut. Ins. Co. v. Schaefer*,

124 S.W.3d 154, 157 (Tex. 2003).

Declining to adopt the findings related to Quilling's testimony, under *de novo* review, the

Court construes paragraph 15 as unambiguous and further determines that LaMonda's request for

25% of the recoveries falls outside of the term "additional assets" as a matter of law.  (Doc. 71-2,

p. 8)  Coupled with the analysis under Subsection b, paragraphs 10-14 list and provide for the

collection of assets related to ABC as well as other entities.[7]  (*Id.* at 7-8)  As can be best

---

[7] These paragraphs are recited below in their entirety.

**10. ABC Assets.** All assets of any nature whatsoever belonging to or in which ABC has an interest shall be deemed
to be receivership estate assets subject to the Receiver's sole control.  Any limiting language in the Receivership
Order shall no longer be applicable.
**11. SLS Assets.** All assets of any nature whatsoever belonging to or in which SLS has an interest shall be deemed to
be receivership estate assets subject to the sole control of the Receiver.  Any limiting language in the Receivership
Order shall no longer be applicable.
**12. Blue Water Trust Assets.** All assets of any nature whatsoever belonging to or in which Blue Water Trust has an
interest shall be deemed to be receivership estate assets subject to the Receiver's sole control.  Any limiting
language in the Receivership Order shall no longer be applicable.
**13. Destiny Trust Assets.** All assets of any nature whatsoever belonging to or in which Destiny Trust has an interest
shall be deemed to be receivership estate assets subject to Receiver's sole control. Any limiting language in the
Receivership Order shall no longer be applicable.
**14. LMFLP Assets.** All assets of any nature whatsoever belonging to or in which LMFLP has an interest shall be
deemed to be receivership estate assets subject to Receiver's sole control.  Any limiting language in the
Receivership Order shall no longer be applicable.

(Doc. 71-2, pp. 7-8)

discerned from LaMonda's requests, he ties his collection efforts to assets specifically provided for in the settlement agreement. Under this logic, LaMonda champions a method of interpretation that imports assets already covered by the judicial order into the phrase "additional assets." Taking the document as a whole and giving the settlement language its plain and ordinary meaning, any activities associated with assets otherwise listed or provided for under the agreement cannot also be additional assets. As such, LaMonda fails to demonstrate that his efforts or any actions on his behalf could be construed as energy expended to recover additional assets under paragraph 15. Consequently, LaMonda seeks compensation for assets that are previously provided for under the settlement agreement and *not* additional assets.

In short, under *de novo* review, the Court finds that the settlement agreement did not contemplate the relief sought by LaMonda under paragraph 15. Therefore, this objection is overruled based on the *de novo* construction of the term "additional assets."

### e.   Objection 5

Fifth, LaMonda makes a general objection regarding the preferential treatment given to Quilling throughout this lawsuit because he was been allowed to act without due regard or accountability to the financial stability of the receivership estate. (Doc. 415, pp. 5-7)

Reviewing the record *de novo*, LaMonda fails to demonstrate specific instances where Quilling received preferential treatment and cannot pinpoint exactly what he did to mismanage the receivership estate. Declining to adopt any factual findings related to Quilling's testimony still leaves a noticeably vacant record to support these contentions.

### f.   Objection 6

Sixth, LaMonda appears to recycle previous objections and further emphasizes that the magistrate judge afforded an undue presumption in favor of Quilling and this favoritism affected

the ultimate interpretation of the contract.  (Doc. 415, pp. 7-8)  This objection is overruled

because the Court declines to adopt any factual findings related to Quilling's testimony.  In

addition, an independent review of the record in its entirely does not demonstrate a nefarious bias

or slant in favor of the receiver to taint any factual findings.

### g.  Objection 7 (Duplicate 6 Restyled as 7)

Seventh, although LaMonda maintains his position that the magistrate judge should not

have applied the clear and convincing standard, he contends that the record meets this standard in

any event.  (Doc. 415, pp. 8-9)   In particular, LaMonda argues that the receiver induced the

parties to enter into the settlement agreement and had no intention of complying with paragraph

15 or distributing payments to LaMonda.  (*Id.*)

From the outset, LaMonda's particular requests are best characterized as a motion to

show cause warranting clear and convincing evidence for relief.  Next, given the previous

analysis, under either this standard or preponderance of the evidence, LaMonda fails provide

sufficient evidence to establish any violations under the settlement agreement.  Completely

disregarding the testimony by Quilling, the record still does not establish that Quilling intended

to disregard paragraph 15 or deny LaMonda any due recovery.  Even more fundamental,

LaMonda fails to present competent evidence to trigger compensation under paragraph 15.

### h.  Objection 8

Eighth, LaMonda argues that he is entitled to a portion of the proceeds from the sale of

ABC's portfolio of settlement policies because—contrary to the assertions of Quilling—

LaMonda contacted the eventual purchaser.  (Doc. 415, pp. 9-10)  As an additional matter

addressed under this specific objection, due to the short period of time to prepare for the oral

hearing coupled with the seizure of his legal materials prior to the hearing, the hearing violated his due process rights. (*Id.*) This argument extends to all objections. (*Id.* at 9)

Taking these arguments one at a time, each fails for different reasons. Even treating LaMonda's allegations as true and correct, the *de novo* construction of the settlement agreement precludes compensation for efforts related to collecting ABC's assets. Additionally, LaMonda cannot show how his due process rights were violated with two weeks to prepare for an oral hearing in Texas. (*See* Doc. 407) Moreover, notwithstanding the seizure of his legal documents for the purposes of transportation from incarceration in North Carolina to Texas, the factual certification reviewed almost 300 exhibits provided by LaMonda. (Doc. 410, pp. 5-18) LaMonda fails to pinpoint what documents were not available for judicial review, what documents were unavailable for review prior to the hearing that may have prejudiced his case, or what witnesses he planned to subpoena. (Doc. 415, p. 10); *see also* Subsection u, *infra* 23-25.

### i. Objection 9

Ninth, LaMonda avers that Quilling should not have foreclosed on the real property located in Florida because no default occurred under the agreement. (Doc. 415, pp. 10-11) In support for this contention, LaMonda argues that agreement did not incorporate any default provisions. (*Id.* at 11) "A constructive trust is an available remedy imposed to redress wrong or prevent unjust enrichment under the circumstances." *Young v. Fawcett*, 376 S.W.3d 209, 215 (Tex. App.—Beaumont 2012, no pet.); *see also Palmland Villas I Condominium Ass'n v. Taylor*, 390 So. 2d 123, 124-25 (Fla. Dist. Ct. App. 4th Dist. 1980) ("[A constructive] is created by law to do equity under the circumstances and without regard to intent.").

The settlement agreement between the parties states that the property "is deemed to be impressed with an equitable constructive trust lien in favor of the Receiver in the amount of

$1,425,000.00." (Doc. 71-2, p. 2)  The agreement goes on to state: "So long as the Receiver, in his discretion, deems it proper, he shall pay all expenses relating to the Kissimmee House. . . . So long as the property is maintained to the Receiver's satisfaction, Keith LaMonda and Leigh Bradley may reside in or otherwise use the Kissimmee House until Keith LaMonda is incarcerated and/or Leigh Bradley is disposed of her interest and required to vacate by the Government." (*Id.*)

Reviewing the factual certification *de novo*, triggering events under the settlement agreement necessitated a foreclosure.  Quilling was forced to spend money to repair the property, LaMonda's wife voluntarily vacated the property, the government would have required her to vacate the property otherwise, and the foreclosure sale was applied for and judicially approved. (Doc. 410, pp. 17, 19)  To the extent that LaMonda seizes on the notion that a foreclosure requires a default similar to a loan or mortgage, this is inapposite with the settlement language affording Quilling the latitude to exercise his rights as receiver pursuant to a constructive trust. *See* Tex. Prop. Code Ann. § 51.001(2) (West 2007) ("Except as provided by Chapter 59, this subtitle does not affect . . . a lien that is not treated in this subtitle, including a lien arising under common law, in equity, or under another statute of this state."); *Palmland Villas I Condominium Ass'n*, 390 So. 2d at 124 ("We determine that a constructive trust comes into existence on the date of the order or judgment of a court of competent jurisdiction declaring that a series of events has given rise to a constructive trust.").  Taken together, all of the conditions precedent for execution of foreclosure were present. *A fortiari*, Quilling foreclosed under a valid equitable lien in accordance with the terms of the settlement agreement.  Nothing in the record suggests that Quilling exceeded his authority as receiver in this instance.

### j.  Objection 10

Tenth, LaMonda argues that the magistrate judge shifted the burden of proof to LaMonda. (Doc. 415, pp. 11-12)  According to LaMonda, he "proved his case-in-chief that there was no default provision in the [a]greement," and therefore the receiver should have been required to prove the lawfulness of the foreclosure.  (*Id.* at 11)

As previously stated, the so-called default occurred through conditions precedent under the settlement agreement.  As an equitable remedy, whatever statutory import or definition that LaMonda attributes to the term default does not fit in this situation.

### k.  Objection 11

Eleventh, LaMonda contends that the magistrate judge failed to give any weight to the testimony offered by Bill Whitehill which discussed LaMonda's assistance in collecting "additional assets." (Doc. 415, p. 12)  Affording Bill Whitehill's testimony its full evidentiary weight, this objection cannot escape the prior *de novo* construction of the settlement agreement finding that LaMonda's actions fell outside of efforts to collect additional assets.  (Doc. 71-2, p. 8)  As such, this objection is overruled.

### l.  Objection 12

Twelfth, LaMonda asserts that the magistrate judge never considered the idea that the business operations in the question could be lawful or legal. (Doc. 415, pp. 12-13)  Given the prior orders in this case and others, this objection is contrary to the established record.  Even assuming that these business operations were legitimate, LaMonda cannot rest a request for relief on this basis alone.  He must show that someone violated a preexisting judicial order; the record is devoid of support for this exacting position.

### m. Objection 13

Thirteenth, LaMonda contends that he was denied his right to a jury trial on the issues that Quilling breached the settlement agreement and LaMonda is entitled to damages because the magistrate judge summarily determined that his Motion to Compel was really a motion to show cause. (Doc. 415, pp. 13-14)  This argument erodes at fundamental levels because a legal right must be present before a legal action can coexist.  Inasmuch as the underlying motions could be taken as causes of action, LaMonda fails to establish a legal right to pursue the relief that he requests. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) ("[W]here there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.").  Therefore, he was not denied the right to a jury trial because he raises issues resolved early on as without merit. *Cf.* Fed. R. Civ. P. 12(b)(6).

### n. Objection 14

Fourteenth, LaMonda objects to the recommendation that he failed to show "assistance" under paragraph 15.  (Doc. 415, p. 13)  Specifically, LaMonda met his burden to establish a prima facie case and the magistrate judge had a duty to point out what type of acts would be required for assistance.  (*Id.*)

As discussed throughout, LaMonda is not entitled to relief under paragraph 15 because his alleged collection assistance was not for "additional assets." (Doc. 71-2, p. 8)  Addressing his second point, to finely cut and articulate the exact assistance required to entitle compensation under paragraph 15 is outside the scope of the briefing and record.  To entertain such a request would invite an impermissible advisory opinion. *See Life Partners, Inc. v. Life Ins. Co. of N. Am.*, 203 F.3d 324, 325 (5th Cir. 1999) (per curiam) ("Federal courts do not render advisory opinions.").

### o.  Objection 15

Fifteenth, LaMonda argues that the magistrate judge adopted a subjectively high standard for what constitutes assistance.  (Doc. 415, pp. 15-16)  According to LaMonda, the record demonstrates that he did render the type of assistance contemplated under the agreement.  (*Id.*)

Contrary to the assertions by LaMonda, the key to assistance under the *de novo* construction of the settlement agreement is *not* his physical exertion but rather what types of assets are being collected.  Consequently, this objection fails.

### p.  Objection 16

Sixteenth, LaMonda objects to the characterizations of his personal efforts to assist in selling the settlement policy portfolios.  (Doc. 415, pp. 16-17)  LaMonda offers that he convinced the ultimate purchaser to attend the auction for the portfolios.  (*Id.* at 16)  According to LaMonda, the receivership estate benefited by more than $5 million from his personal efforts alone, entitling him to at least $1.25 million.  (*Id.* at 17)

As discussed previously, giving LaMonda's personal efforts as much weight and deference as possible does not negate that these assets fell within purview of ABC.  Therefore, this objection fails to carry legal significance because paragraph 15 is inapplicable.

### q.  Objection 17

Seventeenth, LaMonda objects to the conclusion that "additional assets" under paragraph 15 cannot be "already assets of the receivership" as well.  (Doc. 415, p. 17)  Specifically, LaMonda avers that he assisted in the "physical" acquisition and transfer of "funds deriving from IFS, the Goldenburg Settlement, E and J, and DMH."  (*Id.*)  Under this logic, "[o]ne can own assets, but if he cannot procure possession of them, the ownership is for naught."  (*Id.*)

As previously discussed, the *de novo* construction of the settlement agreement distinguished between assets already listed under the agreement and those that are not (i.e., additional assets). Moreover, ownership and possession are legally distinct concepts capable of existing at once or in isolation between multiple entities. As such, this objection is overruled.

### r. Objection 18

Eighteenth, although unclear, it appears that LaMonda objects on the grounds that the magistrate judge's construction of the contract essentially frustrates the intent of the parties, denies access to necessary litigation documents, and fails to provide the litigants with guidance and clarification as to the term "additional assets." (Doc. 415, p. 18)

The forgoing analysis addresses all of these contentions. Again, under the *de novo* construction of the settlement agreement, all terms are unambiguous and capable of full meaning without the need for extrinsic evidence. Taking the settlement agreement as whole, LaMonda's actions fall outside of paragraph 15.

### s. Objection 19

Nineteenth, LaMonda objects to the magistrate judge's unwillingness to freeze assets under his Motion pursuant to the All Writs Act, 28 U.S.C. § 1651 *et seq.*, because he satisfies the requisites for a preliminary injunction. (Doc. 415, p. 19) The All Writs Act is a source of authority for issuing writs in situations not covered by statute. *Carlisle v. United States,* 517 U.S. 416, 429 (1996).[8] A federal court may issue a preliminary injunction or TRO to restrain or require certain acts. *See* Fed. R. Civ. P. 65(a)-(b). For this type of relief, a movant must establish:

---

[8] The Court addresses this objection in the context of a motion for preliminary injunction because LaMonda specifically objects on these grounds under his All Writs Act Motion. (*See* Doc. 356)

(1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.

*La Union del Pueblo Entero v. FEMA*, 608 F.3d 217, 219 (5th Cir. 2010); *see also Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) ("The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted."). Preliminary injunctions and TROs are "extraordinary" and "drastic" remedies that "should not be granted unless the movant clearly carries the burden of persuasion." *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974). "The purpose of [these orders] is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

Reviewing the objection, LaMonda's arguments in favor of a preliminary injunction fail on all fronts. The previous analysis demonstrates that LaMonda cannot succeed on the merits for any of his requests. Moreover, LaMonda is unable to show what irreparable harm arises from performing under the settlement agreement. The threatened harm that LaMonda stands to suffer pales in comparison to enjoining a judicial decree supporting a receivership. Finally, the public interest is furthered by upholding judicial orders pursuant to voluntary settlement agreements absent a showing to the contrary of unlawful conduct.

**t.   Objection 20**

Twentieth, LaMonda argues that Quilling's "contemptuous manner" is deserving of sanctions and the magistrate judge's method to dispose of this issue warrants correction. (Doc. 415, pp. 19-20) LaMonda moved for sanctions on the basis that the receiver acted "undignified" by admitting that "he never intended to negotiate or bargain with LaMonda based upon his belief

that doing so would merely encourage him." (*Id.*) According to LaMonda, the stay imposed by the magistrate judge frustrated the purpose of his request which was to "possibly effectuate change in the Receiver's contemptuous manner." (Doc. 415, p. 20; Doc. 399)

Reviewing the record in its totality, sanctions are not warranted against Quilling because LaMonda fails to establish a foundational legal right to bring any of his motions. Hurt feelings and indignities are not enough to warrant sanctions by themselves. Beyond this, LaMonda fails to address the legal standard to merit an order for sanctions under the Federal Rules of Civil Procedure or elaborate on the limited circumstances to invoke the Court's inherent sanction authority. *See* Fed. R. Civ. P. 11; *Terra v. Rabo Agrifinance, Inc.*, No. 11-11166, 2012 U.S. App. LEXIS 26291, at *3 (5th Cir. Dec. 21, 2012) (per curiam and unpublished) ("The threshold for using our inherent powers is high, and we 'must make a specific finding that the sanctioned party acted in bad faith,' before imposing sanctions." (quoting cases)).

### u. Objection 21

Twenty-first, LaMonda objects on due process grounds to the events before, during, and after the magistrate judge's hearing. (Doc. 415, pp. 20-21) On December 6, 2012, the magistrate judge issued an order requiring the parties to refrain from further filings. (Doc. 399) On February 7, 2013, the magistrate judge set an evidentiary hearing for February 20, 2013. (Doc. 407) LaMonda argues that two months passed without being afforded an opportunity to be heard and then was "forced" to present his Motion to Compel within 14 days. (Doc. 415, pp. 20-21) During these 14 days, LaMonda was relocated from incarceration in North Carolina to Texas and the U.S. Marshall Service allegedly seized all of his legal documents. (*Id.* at 21) At the hearing, LaMonda was given 90 minutes to present his case and the receiver has given a proportional amount of time. (*Id.*) In addition, a coercive and hostile atmosphere supposedly led

LaMonda to change his motion posture from a Motion to Compel to a motion to show cause. (*Id.* at 22)  After the hearing, the magistrate judge ordered LaMonda to remain in Texas for 14 days following receipt of the instant recommendation so that he may properly object.  (*Id.* at 21-22)  LaMonda argues that he was placed in an isolated cell during this time and unfairly denied his immediate return to North Carolina to address cardiovascular and blood glucose health concerns.  (*Id.* at 22)  Taken together, all of this "was to manipulate LaMonda and impede his ability to file meaningful" objections to a "prefabricated" recommendation delivered two days after the hearing.  (*Id.* 22-23)

Due process guarantees a fair procedure before depriving an individual of a constitutionally protected interest.  *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990); *DePree v. Saunders*, 588 F.3d 282, 289 (5th Cir. 2009) ("The threshold requirement of any due process claim is the government's deprivation of a plaintiff's liberty or property interest.")  The key to procedural due process is whether the movant was afforded the measure of process to which he was constitutionally entitled prior to losing a protected interest.  *See Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 533 (1985).  On the other hand, substantive due process "prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty."  *United States v. Salerno*, 481 U.S. 739, 746 (1987).

Reviewing the arguments presented and the record at bar, LaMonda fails to demonstrate how the hearing or any surrounding events violated his due process rights.  While the proceedings leading up to the hearing may have been less than ideal, that in no way suggests that LaMonda was deprived of a protected interest—substantively or procedurally.  As a North Carolina prisoner, he needed to be transported—along with almost 300 exhibits—to Texas for the hearing.  Further, two weeks cannot be viewed as hasty to resolve issues that, in LaMonda's

estimate, required immediate attention.  Moreover, LaMonda fails to point to any inadequacies during the hearing itself.  As addressed previously, LaMonda cannot change his mind now and withdraw consent after receiving a result that was less than desired.  To the extent that LaMonda suggests that he had additional evidence or further discovery would yield a stronger case, he has had a very long runway to present his case-in-chief and nothing in the record demonstrates that LaMonda was short-changed or given less than adequate time to prepare.  Finally, the magistrate judge's order requiring LaMonda to remain in the jurisdiction for 14 days actually served to ensure that he received full protection under the law given the time limits to file objections. While sympathetic to the health concerns presented to any person in confinement, the record fails to establish that LaMonda was subjected to an environment that shocked the conscience or otherwise violated his constitutional rights.

In the sum, the record does not demonstrate either a procedural or substantive due process violation.

### v.  Objection 22

Twenty-second, LaMonda argues that the magistrate judge failed to consider Quilling's "bias engendered by receiving millions of dollars which he and his firm received" during an ongoing "ruse" with the SEC "to destroy the businesses of hardworking citizens and turn the assets of legitimate businesses to their own advantage."  (Doc. 415, p. 23)

As the *de novo* review declined to consider the testimony of Quilling, this final objection fails as moot.  Indeed, the Court defused this contention by only reviewing LaMonda's testimony and the evidentiary record sans the testimony of Quilling.

**w. All Other Portions that Did Not Receive Objections**

Finally, for those portions of the findings, conclusions, and recommendation that go unopposed, in accordance with 28 U.S.C. § 636, the Court reviews and accepts these areas of the report.  Based on the previous analysis and the Court's independent review of the areas not specifically highlighted as objectionable, all four motions are denied.

**IV.     Conclusion**

For the foregoing reasons, the Court ACCEPTS IN PART and DENIES IN PART the United States Magistrate Judge's Findings, Conclusions, and Recommendation.  Nevertheless, for the forgoing reasons, the Court DENIES LaMonda's Motion to Compel, Motion to Freeze and Enjoin, Motion for Sanctions, and Motion to Intervene.

**IT IS SO ORDERED.**

Signed this _28th_ day of March, 2013.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE